IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

RODERICK WHITE                                                                                          PLAINTIFF
ADC #92057

V.                                        NO.  5:07cv00079 JWC

DR. JONATHON SIMMONS, et al                                                              DEFENDANTS


MEMORANDUM ORDER AND OPINION

On April 17, 2007, Plaintiff, a pro se inmate currently confined to the East Arkansas Regional Unit of the Arkansas Department of Correction ("ADC"), filed this 42 U.S.C. § 1983 civil rights action (docket entry #2).  The Court notes that this case has previously been filed as White v. Ifediora, 5:05cv00298.  That case was dismissed without prejudice on administrative exhaustion grounds by order entered March 2, 2007 (see Case No. 5:05cv00298; docket entry #130).  Six of the eight Defendants named in the present case were named in the former case.

On June 19, 2007, Defendants James, White, and King filed a motion to dismiss and brief in support (docket entries #19, #20) in which they sought to dismiss Plaintiff's complaint on the grounds that he has failed to exhaust his administrative remedies, he has failed to state a claim upon which relief can be granted, respondeat superior is not a basis for § 1983 liability, and Plaintiff's claims are barred by the doctrines of sovereign and qualified immunity.  These same Defendants filed a second motion to dismiss and brief in support (docket entries #61, #62) this time in response to Plaintiff's two-page amended complaint.  By order entered September 21, 2007 (docket entry #57), Plaintiff was permitted to amend his complaint to add a retaliation claim against Defendant White.

Defendants' most recent motion advances arguments identical to those in their earlier motion; however, it fails to address the sole issue of the amended complaint— the retaliation claim. By order entered October 11, 2007 (docket entry #65), the Clerk of the Court was directed to re-designate docket entries #61 and #62 as Defendant James', White's, and King's supplements to their original motion to dismiss. Plaintiff has responded to the original motion (docket entry #29).

## I.  Background

According to Plaintiff's original complaint (docket entry #2), Defendant Simmons diagnosed him with glaucoma in approximately November 2001. Defendant Simmons prescribed Plaintiff eyeglasses and placed him on chronic care medications for his eyes, without expiration. Defendant Ifediora changed Plaintiff's medical class from M-1 to M-2 which resulted in his removal from hoe squad field duty based on medical work restrictions. In addition, Defendant Ifediora signed a medical restriction script stating that Plaintiff was restricted from work requiring "acuity vision"; however, he failed to specify what "acuity vision" meant— in Plaintiff's opinion, leaving the door open for prison administration to decide. From November 2001 to August 2005, Plaintiff was housed at the Varner Unit before being transferred to the Tucker Max Unit where he was placed in segregation until October 5, 2005. After appearing before the classification committee headed by Defendants White and James, Plaintiff was placed on field utility, an allegedly less strenuous job than hoe squad and designated for inmates with restrictions of a medical nature. According to Plaintiff, the only difference between field utility and hoe squad at the Tucker Max Unit was a ten-minute break each hour. The job tasks are allegedly identical and, Plaintiff claims, violate his medical classification and work restriction designations.

Plaintiff further claims he was subjected to extremely arduous and strenuous work duties from October 5, 2005, until he was removed from field utility on May 1, 2006.

In addition to his alleged wrongful placement on field utility by the classification committee (Defendants White, James, King, Green, and Stell), he was prescribed essential chronic care eye medications by Defendant Simmons. Plaintiff used these drops for a period of five years and continued to experience pain and discomfort as well as no noticeable improvement in his vision. Plaintiff was seen by Dr. Dunn, a specialist, in April 2005. Dr. Dunn changed Plaintiff's prescription and purportedly explained to Plaintiff that he should never have been placed on a steroid eye drop for more than a week (Plaintiff had used the steroid eye drops prescribed by Defendant Simmons for three years). Towards the end of 2005 and the first half of 2006, Plaintiff was seen several times by Dr. Westfall, another specialist, who ultimately recommended and did remove Plaintiff's left eye. On October 9, 2005, Plaintiff filed a grievance (MX-05-1512) notifying officials of their deliberate indifference by placing him on field utility duty in violation of his medical classification and subjecting him to conditions that severely aggravated his glaucoma (dust, dirt, pollen, glare, and sunlight) and caused him pain and discomfort. On April 4, 2006, Plaintiff filed a second grievance (MX-06-00341) addressing his assignment to field utility duty. Warden White's decision of this grievance states: "I have reviewed your grievance . . . unit records reflect that your assignment is commensurate with your medical status." Plaintiff alleges that Defendant White obviously made no effort to investigate his grievance or to check with medical personnel about his status— the Deputy Director's decision of Plaintiff's appeal of Defendant White's decision states: "Based upon your medical records . . . as of 5-1-06 you have been restricted from outside duties as well as restricted from

3

activities requiring good visual acuity.  At this time I am considering this complaint resolved and closed."  Only then was Plaintiff removed from field utility duty.

Plaintiff contends that he first began putting in sick calls complaining of his eyesight problems in 2002.  He waited two years before he filed his first complaint about the matter.  He claims he made verbal requests for the proper medication, ointment, referral to an eye specialist, and eye surgery to both Defendants Simmons and Bowler for years but neither would recommend same despite his patent symptoms.  Plaintiff contends he was not treated appropriately until late 2005 by Dr. Westfall and by then it was too late to save his eyesight.  He further claims that Defendants Green and Stell failed to see that he was properly classified and medicated and failed to excuse him from field work detail in the face of his glaucoma diagnosis and physical symptoms. Plaintiff holds Defendant Ifediora liable for failing to specifically stipulate what Plaintiff was and was not expected to do, thus allegedly leaving the doors open for Defendants White, James, and King to interpret his diagnostic terminology to Plaintiff's detriment.  He additionally holds them each liable for improperly assigning him between October 2005 and May 2006.  According to Plaintiff, Defendants subjected him to years without proper eye medication, ointments, and surgery and at the same time demanded that he report to field utility duty.

In his amended complaint (docket entry #59), Plaintiff alleges that Defendant White and his subordinates (at his direction) are refusing him his eye drops and pills for his glaucoma, as well as follow-up care at Jones Eye Institute in retaliation for filing the present action.

## II.  Standard

Dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is proper only if,

accepting each allegation as true, it appears beyond doubt that Plaintiff can prove no set of facts in support of his claim or claims that would entitle him to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Estelle v. Gamble, 429 U.S. 97, 106 (1976) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)); Murphy v. Lancaster, 960 F.2d 746, 748 (8th Cir. 1992).  In addition, pro se complaints must be liberally construed and held "to less stringent standards than formal pleadings drafted by lawyers." Haines, 404 U.S. at 520-21.  Moreover, where Plaintiff is proceeding pro se, the Court must consider facts set forth in any opposition to the motion to dismiss in determining whether a cognizable claim has been stated.  Ketchum v. City of West Memphis, 974 F.2d 81, 82 (8th Cir. 1992).

### III.  Analysis

**A.     Administrative Exhaustion**

Defendants first contend that there is no evidence that Plaintiff properly notified Defendants through the grievance process of any alleged wrongful conduct; therefore, his claims against them must be dismissed on exhaustion grounds.  An inmate must exhaust all available administrative remedies prior to initiating a § 1983 prison conditions suit.  42 U.S.C. § 1997e(a) ("[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted"); Johnson v. Jones, 340 F.3d 624, 627 (8th Cir. 2003) ("Under the plain language of § 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court . . . . If exhaustion was not completed at the time of filing, dismissal is mandatory"); Graves v. Norris, 218 F.3d 884, 885 (8th Cir. 2000) (holding that "all available prison grievance remedies must be exhausted as to all of the [plaintiff's] claims"); Chelette v. Harris, 229

F.3d 684, 688 (8th Cir. 2000), cert. denied, 531 U.S. 1156 (2001) (stating that "if administrative remedies are available, the prisoner must exhaust them," regardless of his subjective beliefs about their availability). Exhaustion of remedies requires the inmate to first attempt informal resolution and then to timely file and appeal a particular grievance through several administrative levels. Plaintiff was required to appeal his grievance(s) to the highest administrative level, the Deputy/Assistant Director of the ADC. See ADC Adm. Dir. 04-01 § IV(G)(5) (February 1, 2004).

An inmate's failure to identify by name during the grievance process each individual defendant he later sues in federal court no longer mandates dismissal pursuant to § 1997e(a). The United States Supreme Court's decision in Jones v. Bock, 127 S. Ct. 910 (2007) held that such an omission was not fatal to a plaintiff's entire case. The plaintiff in Jones challenged the rule requiring that every defendant to be named in a subsequent lawsuit must also be named during the grievance process as well as the "total exhaustion" rule. The Jones court concluded that "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." Jones held that the PLRA itself does not impose such a requirement; instead, the parties must look to what the prison grievance process itself requires. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Id. at 923. Jones additionally rejected the "total exhaustion" rule requiring dismissal of the complaint as a whole, concluding instead that courts should proceed with the exhausted claims in instances where the plaintiff has failed to exhaust some, but not all, of the claims asserted. Id. at 924-26.

Attached to Plaintiff's response to the motion to dismiss is Grievance MX-05-1512 (see docket entry #29). It very clearly names Defendants James, White, and King and complains that each is being deliberately indifferent to Plaintiff's serious medical needs by requiring him to work in the field in violation of his known medical condition of glaucoma. Not only are the three Defendants specifically named, this grievance was fully exhausted on November 20, 2005. Defendants' motion to dismiss on exhaustion grounds is, therefore, denied.

**B.    Failure to State a Claim**

Defendants next contend that Plaintiff has failed to state a constitutional violation against them. On October 5, 2005, Plaintiff went before the classification committee, at which time it was determined that he could be placed in general population and given a work assignment. Plaintiff's file was reviewed, which included his current medical classification of M-2 level. Plaintiff's only medical restriction was that he could not be assigned to a job that required good visual acuity. In accordance with institutional and medical operations policy, Defendants contend that Plaintiff was assigned to field utility, which was commensurate with his medical classification and restrictions. On that same day, October 5th, Plaintiff put in a sick call request in which he requested protection for his eyes for working outside. Plaintiff was seen by medical staff on October 6, 2005, and was issued a pair of Ocu-Shield safety glasses.

Defendants contend that Plaintiff has no constitutional right to any particular job assignment. They further contend that Plaintiff was medically classified as an M-2 and as such was not restricted from field utility. To the contrary, they argue that field utility was an appropriate job assignment for Plaintiff's medical classification. Even assuming that

Plaintiff complained, no physician changed his medical classification or prohibited him from working field utility.  Moreover, Defendants contend that they have no role in medically classifying Plaintiff; rather, physicians evaluated him and determined that he could labor.  Because Plaintiff has no constitutional right to any particular job assignment, Defendants argue he has failed to state a constitutional claim against them.  At this stage of the litigation, where the Court must accept Plaintiff's allegations as true, the Court disagrees.

According to Plaintiff, after appearing before the classification committee headed by Defendants White and James, he was placed on field utility, an allegedly less strenuous job than hoe squad and designated for inmates with restrictions of a medical nature.  Plaintiff asserts that the only difference between field utility and hoe squad at the Tucker Max Unit was a ten-minute break each hour.  The job tasks were allegedly identical and Plaintiff claims, violated his medical classification and work restriction designations.  Defendant Ifediora signed a medical restriction script stating that Plaintiff was restricted from work requiring "acuity vision"; however, because he failed to specify what "acuity vision" meant— in Plaintiff's opinion, he left the door open for Defendants White, James, and King to interpret this terminology to Plaintiff's detriment.

While Defendants are correct that Plaintiff does not have a constitutional right to any particular job assignment, he does have a constitutional right to a job assignment that by its very nature is not deliberately indifferent to his known medical condition. See Hussey v. Green, No. 5:04CV00034, 2006 WL 1817085, at *7 (E.D. Ark. June 30, 2006) (citing Franklin v. Lockhart, 890 F.2d 96, 97 (8th Cir. 1989)) (plaintiff has no constitutional right to a particular job assignment, nor does his assignment to field duty constitute cruel and unusual punishment per se).  As such, Plaintiff's claim is appropriately analyzed under the

standard applicable to Eighth Amendment failure to protect claims. "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." See Helling v. McKinney, 509 U.S. 25, 31 (1993). The parties do not dispute that Plaintiff has/had glaucoma. They also do not dispute that ultimately Plaintiff's left eye was removed due to this degenerative eye disease. Although Defendants contend that Plaintiff's only medical restriction was that he could not be assigned to a job that required good visual acuity, this Court fails to understand how assigning Plaintiff to field utility somehow conformed to that restriction. Common sense dictates that visual acuity, in any fashion defined, is a necessary prerequisite to a field utility job assignment. That, as well as Plaintiff's allegations, suffice at this stage of the litigation to state an Eighth Amendment claim.

**C.    Respondeat Superior**

With no analysis to speak of, Defendants additionally contend that respondeat superior is not a basis for liability against Defendants White and James simply by virtue of the positions they held in 2005. For a defendant to be held liable under § 1983, he or she must have personally participated in, or had some responsibility for, the particular act which deprived the plaintiff of a constitutionally protected right. Ellis v. Norris,179 F.3d 1078, 1079 (8th Cir. 1999); Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990). "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." Madewell, 909 F.2d at 1208 (citing Rizzo v. Goode, 423 U.S. 362, 370-71, 375-77 (1976); Cotton v. Hutto, 577 F.2d 453, 455 (8th Cir. 1978) (per curiam)). The doctrine of respondeat superior is generally an improper basis upon which to rest a § 1983 claim because an individual cannot be held liable solely on the actions or inactions of his or her

subordinates.  Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995).  Moreover, "general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability."  Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997) (quoting Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995)).

To reiterate, Plaintiff alleges that after appearing before the classification committee headed by Defendants White and James, he was placed on field utility despite their knowledge of his known medical disabilities and restrictions.  Generally, a supervisory official cannot be liable under § 1983 for alleged medical mistreatment unless he was personally involved in the violation or where his corrective inaction constitutes deliberate indifference toward the violation.  Boyd, 47 F.3d at 968 (citing Choate v. Lockhart, 7 F.3d 1370, 1376 (8th Cir. 1993)); see also Johnson v. Lockhart, 941 F.2d 705, 707 (8th Cir. 1991) ("Abdication of policy-making and oversight responsibilities can reach the level of deliberate indifference when tacit authorization of subordinates' misconduct causes constitutional injury").  To be held liable, a supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see."  Boyd, 47 F.3d at 968 (quoting Ripson v. Alles, 21 F.3d 805, 809 (8th Cir. 1994)).  In the present case, Plaintiff has alleged direct participation and personal involvement by Defendants White and James that would preclude dismissal on respondeat superior grounds.[1]  Moreover, Plaintiff's complaints cannot be read as even alleging liability on respondeat superior grounds.

---

[1] Recall that Plaintiff has alleged that Defendant White made no effort to investigate his grievance (MX-06-00341) or to check with medical personnel about his status. The Deputy Director essentially disagreed with Defendant White's decision which resulted in Plaintiff's removal from field utility duty.

**D.    Sovereign Immunity**

Defendants next contend that Plaintiff's claims against them are barred by the doctrine of sovereign immunity.  Public officials may be sued under § 1983 in either their official or individual capacity, or both.  Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999).  To sue a public official in his individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise it will be assumed that the defendant is being sued only in an official capacity.  Id.  Plaintiff seeks compensatory and punitive damages from Defendants.  In his original complaint (docket entry #2), Plaintiff very clearly states that he is suing Defendants in both their official and individual capacities.

The Eleventh Amendment bars a citizen from bringing suit in federal court against a state, a state agency, or a state official sued in his official capacity for monetary damages which must be paid from public funds in the state treasury.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 66 (1989); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Barnes v. State of Missouri, 960 F.2d 63, 64 (8th Cir. 1992) (per curiam); Nix v. Norman, 879 F.2d 429, 431-32 (8th Cir. 1989).  However, a state official may nevertheless be sued in an individual capacity for action taken in an official capacity and such a claim is not barred by the Eleventh Amendment.  Hafer v. Melo, 502 U.S. 21, 25 (1991). Only two exceptions exist to Eleventh Amendment immunity: (1) "where Congress has statutorily abrogated such immunity by 'clear and unmistakable language,'" or (2) where a state has waived its immunity to suit in federal court, but "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction."  Barnes, 960 F.2d at 64-65 (citing Welch

11

v. Texas Dep't of Highways & Pub. Transp., 483 U.S. 468, 473-74 (1987)).  Neither exception is applicable to Plaintiff's case.  See Will, 491 U.S. at 66.

Plaintiff's claim for monetary damages against Defendants in an individual capacity clearly is not barred by the Eleventh Amendment; however, his claim for monetary damages against Defendants in an official capacity is barred.

**E.    Qualified Immunity**

Defendants last contend that since Plaintiff has failed to establish any constitutional violations, they are entitled to qualified immunity.  Defendants' entire argument consists of a single paragraph where they neither set forth the standard of law applicable to qualified immunity nor do they set forth a basis for granting relief on qualified immunity grounds.  Plaintiff has stated a constitutional violation against Defendants, and this point is without merit.

## IV. Conclusion

For the reasons set forth herein, IT IS, THEREFORE, ORDERED that:

1.    Defendants James', White's, and King's motion to dismiss (docket entry #19) is GRANTED IN PART and DENIED IN PART.

2.    Defendants' motion to dismiss on sovereign immunity grounds is GRANTED IN PART; however, only Plaintiff's claim for monetary damages against Defendants in an official capacity is barred.  All other grounds in the motion to dismiss are DENIED.

IT IS SO ORDERED this 25th day of March, 2008.

_____
UNITED STATES MAGISTRATE JUDGE

12