IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

RODERICK WHITE                                                                                PLAINTIFF
ADC #92057

V.                                        NO.  5:07cv00079 JWC

DR. JONATHON SIMMONS, et al                                                      DEFENDANTS

MEMORANDUM OPINION AND ORDER

In this 42 U.S.C. § 1983 lawsuit, Defendants Tommy James, David White and Venita King, officials of the Arkansas Department of Correction (ADC), have filed a motion for summary judgment (**doc. 100**), together with a brief in support (doc. 101) and statement of facts not in dispute (doc. 102).  Plaintiff has responded (doc. 109).  On March 10, 2009, the Court held a pre-jury hearing for the purposes of obtaining further evidence regarding the motion for summary judgment.[1]  The hearing was also for the purpose of determining whether Plaintiff's claims against the remaining Defendants are supported by substantial evidence.  The remaining Defendants are Jonathon Simmons, M.D.; Larry Bowler, M.D.; Nnamdi Ifediora, M.D., Charlotte Green; and Juanita Stell.  They are all employees of Correctional Medical Services (CMS), the medical care provider for the ADC.  For the reasons set forth below, the ADC Defendants' motion for summary judgment (doc. 100) is **granted** in full.  Additionally, some claims against the CMS Defendants are dismissed and some remain.

**Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure

---

[1] The parties have consented to the jurisdiction of the Magistrate Judge (doc. 41).

materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The Court must view the facts in the light most favorable to the nonmoving party, giving him the benefit of all reasonable inferences.  *Van Horn v. Best Buy Stores, L.P.*, 526 F.3d 1144, 1148 (8th Cir. 2008). Nevertheless, a moving party is entitled to summary judgment if the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he will have the burden of proof at trial.  *Celotex*, 477 U.S. at 322-23.  To avoid summary judgment, the nonmovant must go beyond the pleadings and come forward with specific facts, by affidavit or otherwise, showing that a genuine, material issue for trial exists.  *Id.* at 324; Fed. R. Civ. P. 56(e).  A nonmovant has an obligation to present affirmative evidence to support his claims.  *Settle v. Ross*, 992 F.2d 162, 163-64 (8th Cir. 1993).

  The mere existence of <u>some</u> alleged factual dispute will not defeat a properly supported motion for summary judgment because Rule 56(c) requires that there be "no <u>genuine</u> issue of <u>material</u> fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Evidence creates a genuine issue of material fact only if the evidence is such that a reasonable trier of fact could return a decision in favor of the party opposing summary judgment.  *Id.* at 248.  In determining which facts are material, courts should look to the substantive law in a dispute and identify the facts which are critical to the outcome of the case.  *Id.*

**Pre-Jury Hearing Standard**

"A pre-jury hearing must be consistent with the plaintiff's right to a jury trial. Therefore, if only the plaintiff presents evidence, the standard is whether his case would survive a Fed. R. Civ. P. 50(a) motion for judgment as a matter of law at trial . . . . Even if both sides present evidence, so that the procedure resembles a summary judgment motion with live evidence, the standard remains the same— 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Johnson v. Bi-State Justice Ctr.*, 12 F.3d 133, 135-36 (8th Cir.1993) (quoting *Anderson*, 477 U.S. at 251-52). *See also Sanders v. Norris*, No. 5:07cv00262 SWW-HDY, 2008 WL 5510742, at *2 (E.D. Ark. Oct. 22, 2008). Pursuant to the standard set forth in *Johnson*, the Court must consider Plaintiff's testimony during the hearing to be true, draw all appropriate inferences in Plaintiff's favor, and refrain from making any credibility determinations.

**Motion for Summary Judgment**

Background Facts[2]

Plaintiff suffers from glaucoma and sarcoid uveitis. Dr. Roland Anderson, Regional Medical Director for CMS, testified at the hearing that glaucoma is a condition caused by excess pressure inside the eye, which causes irreversible damage to the optic disc and can lead to blindness. It is treated by eye drops to lower the intraocular pressure or by surgery to open the eye's drainage system. Sarcoid uveitis is a chronic inflammation and scarring of the interior of the eye which can also lead to sight damage, blindness, or even

---

[2] The facts set forth in this section or in any other part of the opinion are either not in dispute or the Court has accepted Plaintiff's testimony.

glaucoma. This was apparently a condition from which Plaintiff has suffered for an extended period of time. Uveitis is treated with anti-inflammatory / steroid eyedrops. Plaintiff's left eye was the most affected, and its condition worsened to the point that he was completely blind in that eye by 2004. He continued to have pain in the left eye due to pressure and uveitis. When medication failed to control the pain, specialists at the University of Arkansas for Medical Sciences (UAMS) removed the left eye in 2006. Plaintiff has also lost peripheral vision in his right eye.

Plaintiff was initially admitted to the Varner Unit of the ADC in 2001. His initial medical evaluation led to a medical classification of M-2[3] with the notation that he was blind in the left eye[4] and the restriction that he should not be assigned to jobs "where good visual acuity is needed." This classification remained essentially the same until April 13, 2006, when he was given a ninety-day restriction of no field duty because of limited side vision. Then, on May 1, 2006, a physician at the ADC's Tucker Maximum Security Unit restricted Plaintiff from outside duties.

Plaintiff was transferred from Varner to Tucker on August 1, 2005. He was in administrative segregation for sixty days and on October 5, 2005, met with the classification committee, which reviewed his medical records and placed him on field utility duty. That duty, according to Plaintiff, was essentially the same as hoe squad duty at Tucker. It involved working outside with a sling blade and other similar tools and would

---

[3] M-1 is the least restrictive medical classification.

[4] Plaintiff testified in deposition that, at the time of the evaluation, he had sight in the left eye, although it was poor. He said he did not become fully blind in the left eye until 2004. The time he became blind in that eye is not relevant to his claims against the ADC Defendants, but is relevant to his claims of improper medical treatment.

expose Plaintiff's eyes to dust, chemicals and glare.

ADC Defendant David White was the unit warden during the period relevant to this action, Tommy James was the assistant warden, and Venita King was the classification officer. All served as members of the classification committee. Plaintiff makes three basic claims against these Defendants. First, he says they were guilty of deliberate indifference to his medical condition and failing to protect him against danger in assigning him to field utility duty, in violation of the Eighth Amendment. Second, he avers they denied him medical care. Third, he says they retaliated against him for bringing the present lawsuit.

## Discussion

1. <u>Claim arising out of ADC Defendants' assigning Plaintiff to field utility duty</u>

Defendants argue that the assignment to field utility duty was proper in that it was consistent with Plaintiff's medical restrictions.[5] There is no dispute that the medical classification on October 5, 2005, was M-2, which would allow assignment to field utility duty under ADC directives. The sole restriction was that Plaintiff was not to be assigned to jobs that required good visual acuity. Plaintiff testified that he told the classification committee about his eye conditions and that assigning him to field utility duty would be painful and would worsen his glaucoma and uveitis. He further argues that the committee should have known from the medical classification and restriction alone that he should not be so assigned. He argues that the committee was put on notice and had a duty to inquire further of the medical staff before making an assignment. He says the action of the ADC

---

[5] Affidavits were attached to the summary judgment motion stating that Defendants White and King were not present at the meeting on October 5, 2005. Tommy James also so stated in his testimony at the hearing. Plaintiff has not offered conflicting evidence, so this would be an additional reason for dismissing this claim as to White and King.

Defendants was deliberately indifferent to his medical condition and amounted to a failure to protect him from danger. The Court will discuss this point, but there is another dispositive fact not in dispute which mandates dismissal of this claim. Namely, Plaintiff suffered no harm from the assignment, as will be discussed below.

Plaintiff does not have a constitutional right to any particular job assignment; however, he does have a constitutional right to a job assignment that by its very nature is not deliberately indifferent to his known medical condition. *Franklin v. Lockhart*, 890 F.2d 96, 97 (8th Cir. 1989). To show deliberate indifference, the inmate must demonstrate that the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). To prevail on his claim of deliberate medical indifference, Plaintiff must prove acts or omissions by Defendants "sufficiently harmful to evidence deliberate indifference to [his] serious medical needs." *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The Eighth Circuit has interpreted this standard to include both objective and subjective components: "The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Jolly*, 205 F.3d at 1096 (citing *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). In determining whether Defendants were deliberately indifferent to his serious medical needs, Plaintiff must demonstrate "more than negligence, more even than gross negligence." *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th

Cir. 1995).

Given the high standard which Plaintiff must meet, the Court finds that the action of the classification committee does not amount to deliberate indifference. The ADC Defendants are not medical personnel. Plaintiff's medical restriction just referred to jobs which required good visual acuity. There was no mention whatsoever of environmental concerns. A CMS nurse was present to give advice on medical matters. She did not tell the committee members they should not assign Plaintiff to field duty. Even taking as true Plaintiff's testimony that he told them of his condition and that he could not work in the field, they were justified in relying on the medical forms. At most, the ADC Defendants were guilty of negligence, not deliberate indifference.

Be that as it may, it is clear from the undisputed record that Plaintiff suffered no harm from the classification. Despite being assigned to field utility duty for approximately seven months, the record shows he actually worked at that duty less than two full days. Plaintiff candidly acknowledged, and the record confirms, that he was called for duty only on October 12, 2005, and December 29, 2005. He had been put on a deferred job list and was called to work only on those two dates. Further, on one of those days, he complained that his eyes were bothering him and he was taken to the infirmary after less than half a day. On the other date, he worked only one-half day. Dr. Roland Anderson testified that glaucoma and uveitis are problems involving the interior of the eye and that environmental conditions such as dust, chemicals and glare would not adversely affect either condition. Plaintiff has not offered contradictory medical evidence. Plaintiff testified he was told his intraocular pressure was elevated after his work on October 12, 2005. While records show

that during that period, the pressure in his left eye was higher than normal limits,[6] they also show that was the case before the first day he was sent to the field. On October 6, 2005, six days earlier, his intraocular pressure for the left eye was 30.[7] While Plaintiff may have had some discomfort, he was allowed to go to the infirmary when he complained and, at any rate, was in the field for only a short time on both occasions. Further, he had been issued safety goggles which would have alleviated any problems. Any problems arising from his assignment were de minimis. Thus, even if the classification for field utility duty amounted to deliberate indifference on the part of the ADC Defendants, any such violation was not the proximate cause of any damages. This claim is therefore dismissed.

2. <u>Claim that the ADC Defendants denied Plaintiff medical treatment</u>

ADC personnel are not medical providers; that is the responsibility of CMS. Plaintiff acknowledged at the pre-jury hearing that they have no authority to prescribe or administer medication. Plaintiff candidly stated that none of the ADC Defendants ever restricted him from sick call or medical care or in any way interfered with his care. He said that when he complained of medical problems, the ADC officers would tell him to put in for sick call. This was proper, and any claim for denial of medical care against the ADC Defendants fails.

3. <u>Claim of retaliation for filing this action</u>

First, Plaintiff has not exhausted administrative remedies as to this claim, as required by the Prison Litigation Reform Act. An inmate must exhaust all available

---

[6] Dr. Anderson testified that below 20 is considered normal, 20 to 25 is considered questionable, and above 25 is above normal limits.

[7] *See* CMS medical defendants' Ex. 5, p. 9. While the date was not completely copied in the exhibit, its sequence and the testimony indicate the 2005 date is correct.

administrative remedies prior to initiating a § 1983 prison conditions suit. 42 U.S.C. § 1997e(a) ("[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted"); *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003). Defendants' motion for summary judgment specifically raises this defense. At the pre-jury hearing, the Court asked for all relevant grievances to be made part of the record. There are three. None deal with retaliation, and all were filed well before this action was filed. Plaintiff offered no countervailing evidence, either in support of his response to the motion for summary judgment or at the hearing. Therefore, it is undisputed that Plaintiff did not exhaust his administrative remedies as to this claim.

Second, Plaintiff was unable to articulate an actionable claim of retaliation when asked at the hearing to state its factual basis. He responded that on an occasion when he was complaining to Defendant White about the poor medical care he was receiving for his eye condition, Defendant White told him to write a grievance, and said if he could not, that Defendant White would write it for him. Apparently, this is a complaint concerning Defendant White's attitude in making the statement. It falls far short of alleging an actionable retaliation. Further, Plaintiff was unable to state any action taken by any Defendant that would amount to unconstitutional retaliatory behavior. For these reasons, Plaintiff's retaliation claim fails.

4. The CMS Defendants

The claims against Charlotte Green, infirmary administrator, and Juanita Stell, infirmary manager, appear to arise solely from Plaintiff's being classified for field utility duty. Because it is clear that this classification and assignment did not result in harm to Plaintiff, these two Defendants are entitled to dismissal of the case as to them. Further, any claim

9

against the three CMS medical doctors based on Plaintiff's medical classification and subsequent assignment to field utility duty is unfounded and is dismissed.

That leaves Plaintiff's claims that the CMS physicians were guilty of deliberate indifference for not properly treating his glaucoma and uveitis, leading to loss of his left eye and damage to his right eye.  For example, Plaintiff's complaint alleges that he should have been referred to specialists much earlier than he was and that surgery to correct the glaucoma should have been performed.  It is true that Plaintiff has not put forward any medical evidence at this point that the course of his treatment overall failed to meet medical standards or that any delay in treatment adversely affected his condition or prognosis.  The Court recognizes that when an inmate is complaining about a delay in treatment, the objective "seriousness" of the deprivation must be measured by reference to the *effect* of any delay.  *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) (citing *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)).  To succeed on his claim, Plaintiff must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment, i.e., that Defendants ignored a critical or escalating situation, or that the delay adversely affected his prognosis.  *Id.*; *Beyerbach v. Sears*, 49 F.3d 1324, 1326-27 (8th Cir. 1995).  However, prisoners are at a distinct disadvantage in trying to obtain medical proof and Plaintiff has not had the opportunity to develop this aspect of the case.  Given the seriousness of his condition, the Court does not feel it proper to dismiss these claims against the physicians on the current state of the record. Plaintiff also claims that Dr. Simmons was guilty of deliberate indifference in continuing to prescribe steroid drops over a long period of time.  He says he was told later that he should not have been on the steroids more than a week.  This is inadmissible hearsay and cannot

be relied upon to counter a motion for summary judgment. See Fed. R. Civ. P. 56(e)(1). Dr. Anderson testified that the steroid drops are to treat the uveitis and their continued use was appropriate. This testimony is corroborated by the fact that when Plaintiff was referred to ophthalmologists at UAMS, they continued prescribing the same medication. However, while it is highly doubtful that countervailing evidence can be produced, the Court cannot say as a matter of law at this point that there is no genuine issue of material fact as to this claim.

## Conclusion

For the reasons stated above, all claims against Defendants White, James, King, Green, and Stell are DISMISSED.

Plaintiff's claims against the three remaining Defendants (Simmons, Bowler, and Ifediora), that arise out of Plaintiff's medical classification and subsequent assignment to field utility duty are also DISMISSED.

Plaintiff's deliberate indifference claims in connection with his course of treatment will proceed against Defendants Simmons, Bowler, and Ifediora at this time.

IT IS SO ORDERED this 18th day of March, 2009.

_____
UNITED STATES MAGISTRATE JUDGE