IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

RODERICK WHITE                                                              PLAINTIFF
ADC #92057

V.                          NO.  5:07cv00079 JWC

DR. JONATHON SIMMONS, et al                                         DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

The sole remaining Defendants in this case, Dr. Jonathon Simmons and Dr. Larry Bowler, have filed a motion for summary judgment (**doc. 120**), supported by a brief (doc. 121) and a statement of facts not in dispute, with attached exhibits (doc. 122).  Plaintiff, who is represented by counsel, has not responded and the twice extended deadline for doing so has expired.[1]  For the reasons that follow, the Court[2] finds that the motion should be **granted**.

**Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The Court must view the facts in the light most favorable to the nonmoving party, giving him the benefit of all reasonable inferences.  *Mason v. Correctional Medical Services, Inc.*, 559 F.3d 880, 884 (8th Cir. 2009).  Nevertheless, a moving party is entitled to summary judgment if the nonmoving

---

[1]*See* docs. 125-129.

[2]The parties have consented to the jurisdiction of the Magistrate Judge (doc. 41).

party has failed to make a sufficient showing on an essential element of his case with respect to which he will have the burden of proof at trial.  *Celotex*, 477 U.S. at 322-23.  To avoid summary judgment, the nonmovant must go beyond the pleadings and come forward with specific facts, by affidavit or otherwise, showing that a genuine, material issue for trial exists.  *Id.* at 324; Fed. R. Civ. P. 56(e).  A nonmovant must "substantiate his allegations with enough probative evidence to support a finding in his favor."  *Jenkins v. County of Hennepin*, 557 F.3d 628, 631 (8th Cir. 2009).  If the nonmovant fails to respond to the motion, "summary judgment should, if appropriate, be entered" against him.  Fed. R. Civ. P. 56(e)(2).

**Law**

Deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment, and it can be manifested by prison medical personnel in their response to the prisoner's needs.  *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  To demonstrate a claim of deliberate indifference, an inmate must show that he suffered from an objectively serious medical need and that prison officials "actually knew of but deliberately disregarded" that need.  *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008).  The standard is "akin to criminal recklessness," and the inmate must show "more than negligence, more even than gross negligence."  *Id.*  Prison medical personnel are entitled to exercise their independent medical judgment, and a mere disagreement with a physician's treatment decisions fails to give rise to a constitutional violation.  *Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1118-19 (8th Cir. 2007).  A medical decision not to order particular tests or treatment

does not represent cruel and unusual punishment, and is a "classic example" of a matter for medical judgment. *Estelle*, 429 U.S. at 107.

Moreover, an inmate complaining that a delay in medical treatment rose to a constitutional violation must place "verifying medical evidence" in the record to establish the detrimental effect of delay in order to succeed. *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005). Sufficient evidence must be submitted "that defendants ignored 'an acute or escalating situation' or that the delays adversely affected" the prognosis. *Sherrer v. Stephens*, 50 F.3d 496, 497 (8th Cir. 1994). In short, the objective seriousness of the alleged deprivation is measured by determining the effect of any delay. *Laughlin*, 430 F.3d at 929.

**General Factual Background**

In reciting facts in this section and in the sections of analysis, the Court has carefully reviewed the transcript of a prejury hearing of March 10, 2009,[3] as well as the evidence submitted with the current motion for summary judgment,[4] and has interpreted the facts in the light most favorable to Plaintiff. Because Plaintiff filed no statement of undisputed facts, the statements and evidence cited by Defendants must be taken as true. Rule 56.1(c), Rules of the United States District Court for the Eastern and Western Districts of Arkansas. Although no response has been filed, the Court has carefully considered all evidence in the light most favorable to Plaintiff because of the seriousness of his condition and in accord with Fed. R. Civ. P. 56(e)(2).

---

[3] Doc. 118.

[4] That supporting material includes the testimony of Dr. Roland Anderson from the prejury hearing.

Plaintiff entered the Arkansas Department of Correction (ADC) in the summer of 2001. He was transferred from the Varner Unit to the Maximum Security Unit on August 1, 2005. He has suffered since childhood from sarcoid uveitis, a chronic inflammation of the eyes which causes scarring and which can cause or exacerbate glaucoma. He does have glaucoma, a condition in which the pressure inside the eyeball is abnormally high. When the pressure reaches a certain level, it can cause pain. Over a period of time, the increased pressure on the retina and optic nerve can cause irreversible damage if untreated. There is no cure for either uveitis or glaucoma, and the aim of treatment is to control the conditions. Glaucoma is treated by medication to reduce the intraocular pressure or can be treated in certain cases by a surgical procedure to insert drains to decrease the pressure. Uveitis is treated with medication. Plaintiff's basic complaint against the remaining Defendants is that they delayed in treating his glaucoma and that he should have been treated surgically. He also contends he was told he had been kept on Prednisone drops for too long a period and that worsened his condition. He contended in his testimony at the prejury hearing that the delay and improper treatment caused him to go completely blind in the left eye and impaired the vision in the right.

Plaintiff testified he eventually went blind in the left eye in 2004. His left eye was surgically removed on July 10, 2006, in order to eliminate the pain he was feeling from increased intraocular pressure. He testified that he feels he is currently getting adequate and appropriate care for his condition.

**Analysis**

<u>Dr. Jonathan Simmons</u>

Dr. Simmons is an optometrist approved by the State of Arkansas to treat eye

disorders such as glaucoma.[5] He is a contract physician for Correctional Medical Services (CMS) which provides medical care for the ADC. He saw Plaintiff on a referral basis a number of times beginning in 2001. At the time of the first visit, Plaintiff was noted to be "basically blind" in his left eye, having only light perception. As set forth in his declaration,[6] Dr. Simmons saw Plaintiff several times between 2001 and November 2005, when the Jones Eye Institute, an opthalmology group at the University of Arkansas for Medical Sciences (UAMS), took over Plaintiff's care. He treated Plaintiff's conditions with medication, which was adjusted as the condition changed. He did, on more than one occasion, recommend that Plaintiff be referred to an opthalmologist.

Plaintiff has failed to offer any medical evidence that Dr. Simmons was deliberately indifferent to his medical condition or even that he failed to meet the standard of care. Further, he has failed to offer any verifying medical evidence to establish the detrimental effect of any delay in treatment that may have occurred during the period Dr. Simmons treated him. Nor has he offered any medical evidence that surgery should have been performed. Plaintiff's contention that surgery should have been performed does not rise above the level of a disagreement with the physicians' medical judgment and does not give rise to a constitutional violation. As early as 2001, the record shows that Plaintiff's vision in the left eye was no better than light perception and Plaintiff admitted this in the prejury hearing. Dr. Simmons and others treated Plaintiff's condition with medication, which basically controlled the intraocular pressure until the spring of 2005. When the condition

---

[5]Tr. 85.

[6]See Declaration of Dr. Jonathan Simmons (Defs.' Ex. B to doc. 122) for the complete history of Dr. Simmons' treatment of Plaintiff's eye condition.

worsened at that time, Dr. Van Dunn and later, Dr. Simmons, recommended that Plaintiff be referred to an ophthalmologist. The recommendations were approved and Plaintiff was seen at the Jones Eye Institute. Importantly, the doctors there basically continued virtually the same treatment ordered by Dr. Simmons, which confirms that his course of treatment was proper. Jones Eye Institute is not a part of CMS or the ADC. As stated by Dr. Roland Anderson at the prejury hearing, after an eye is blind, treatment of glaucoma is simply for the purpose of treating pain, because the condition is irreversible.[7]

Plaintiff faults Dr. Simmons for continuing him on steroid drops, saying that he was told this should not have happened. This belief apparently arises from visits to Dr. Van Dunn.[8] Setting aside hearsay objections for the sake of argument, the medical records show that Dr. Dunn did not discontinue steroid medication when he saw Plaintiff. He did taper off the steroid medication for the right eye because its intraocular pressure was not elevated, but continued it for the left eye, in which the pressure was a problem. Also, the doctors at Jones Eye Institute continued Plaintiff on steroid medications in an effort to reduce the pressure in the left eye. It was only after the steroids failed to reduce the pressure that they recommended and performed an enucleation to treat the pain Plaintiff was experiencing. Finally on this point, Dr. Anderson directly refuted the contention that Plaintiff was continued on steroid medication for too long a period. Plaintiff has offered no countering evidence.

Dr. Anderson and the two Defendants have stated under oath that the care afforded

---

[7] Tr. 116.

[8] The record does not include visits to treating physicians other than those mentioned in this opinion.

6

Plaintiff for his eye condition met accepted standards for care in the medical community. Plaintiff has not refuted this with medical evidence, although it is incumbent on him to do so in order to prevail. Therefore, his claim against Dr. Simmons must fail and summary judgment will be granted.

### Dr. Larry Bowler

Dr. Bowler is a physician who is board certified in internal medicine. He did not see Plaintiff until August 2005. The complete history of his involvement is contained in his declaration.[9] At the first visit, Dr. Bowler completed a request for a consultation with Dr. Simmons. During the time that Dr. Bowler was involved, Plaintiff was also seeing Dr. Simmons and had been referred to Jones Eye Institute. Dr. Bowler prescribed medicine for Plaintiff's condition and because Plaintiff was suffering from pain at the time, he prescribed pain medication, including narcotic pain medication. Nothing in the record indicates that Dr. Bowler ever failed to treat Plaintiff, and Dr. Anderson testified that Dr. Bowler appropriately prescribed medications to relieve Plaintiff's pain. Obviously, there was nothing Dr. Bowler could have done at the late date he began seeing Plaintiff to have avoided the ultimate outcome with Plaintiff's left eye (especially remembering that Plaintiff testified he had been blind since 2004) and there is no indication he was deliberately indifferent to Plaintiff's pain. In fact, the record shows that he endeavored to control the pain. The record shows he made a number of consultation requests for Plaintiff during the spring of 2006, which ultimately resulted in approval, leading to Plaintiff's surgery on July 10, 2006. Dr. Bowler and Dr. Anderson have both stated under oath that he met the

---

[9]Defs.' Ex. C to doc. 122.

proper standard of care, and Plaintiff has been unable to refute that with any medical evidence. His claim against Dr. Bowler must also fail.

## Conclusion

Plaintiff has failed to establish the existence of any disputed material facts and, viewing the evidence in the light most favorable to him, there is no substantial evidence of medical indifference or any constitutional violation. The summary judgment motion of remaining Defendants Simmons and Bowler (doc. 120) will be **granted**, dismissing the complaint against them with prejudice.

The jury trial scheduled for December 1, 2009, is hereby cancelled. Judgment shall be entered dismissing this action in its entirety.

IT IS SO ORDERED this 14th day of October, 2009.

_____
UNITED STATES MAGISTRATE JUDGE